IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRACEY KINCAID,<br><br>                  *Plaintiff*,<br><br>    v.<br><br>DOLLAR TREE, INC., *et al*,<br><br>                  *Defendants*. | Civil Action No. 2:25-cv-00787<br><br>Hon. William S. Stickman IV |

**MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

    Plaintiff Tracey Kincaid ("Kincaid") alleges that she was shopping for coffee mugs in the houseware section of Defendant Dollar Tree ("Dollar Tree"). (ECF No. 3-1, p. 4). As she reached to a top shelf to grab a coffee mug, a cup tipped over, spilling its contents on her face, head, body, and clothing. (*Id.*). The cup contained urine "and potentially other hazardous fluids." (*Id.*). Defendant Heather Fender ("Fender") was the store manager working at Dollar Tree at the time of the incident. (*Id.* at 3-4). Fender took Kincaid to the restroom and provided her with soap and a new shirt. (*Id.* at 4).

    Kincaid filed a complaint against Defendants Dollar Tree and Fender (collectively, "Defendants") in the Court of Common Pleas of Allegheny County, separately alleging negligence, recklessness, willfulness, and wantonness against Defendants at Counts I and II. (*Id.* at 5, 7). The complaint also asserted a claim of *respondeat superior* against Dollar Tree at Count III. (*Id.* at 9). Defendants filed a notice of removal to this court. (ECF No. 3). Even though both Kincaid and Fender are residents of Pennsylvania, Defendants argues that removal is appropriate because Fender was fraudulently joined to preclude removal.

1

Kincaid disagrees that her joinder of Fender was fraudulent and she filed a motion to remand. (ECF No. 9). Fender opposes the motion to remand and she filed a motion to dismiss. (ECF No. 5). The Court holds that, as pled, there are no grounds upon which Kincaid may maintain an action against Fender under Pennsylvania law. It will deny Kincaid's motion to remand and grant Fender's motion to dismiss for the following reasons.

## I. STANDARD OF REVIEW

### A. Motion to Remand

A motion to remand presents a question of subject matter jurisdiction. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (citations omitted). 28 U.S.C. § 1441 governs removal of civil actions. It states that cases where federal jurisdiction is based solely on diversity of the parties "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). "[T]he removal statute should be strictly construed, and all doubts should be resolved in favor of remand." *Abels v. State Farm Fire & Cas. Co.* 770 F.2d 26, 29 (3d Cir. 1985) (citation omitted). At this early stage of the litigation, a court's review is deferential to the party seeking remand, less stringent, even, than its review of a motion to dismiss. *See Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992) ("The inquiry into the validity of a complaint triggered by a motion to dismiss under Rule 12(b)(6) is more searching than that permissible when a party makes a claim of fraudulent joinder.").

"Fraudulent misjoinder, otherwise known as 'procedural misjoinder[,]' 'refers to a situation where a plaintiff attempts to frustrate a defendant's right to remove by joining a non-diverse party in violation of the applicable joinder rule.'" *Breitner v. Merck & Co., Inc.*, Civil

2

Action No. 3:18-cv-15982, 2019 WL 316026, at *2 (D.N.J. Jan. 24, 2019) (quoting *Saviour v. Stavropoulos*, 2015 WL 6810856, at *6 (E.D. Pa. Nov. 5, 2015)). Joinder is fraudulent if "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006) (quoting *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985)).

The removing party bears the burden of persuasion to show fraudulent misjoinder intended to destroy diversity jurisdiction. *Pa. Employees Benefit Trust Fund v. Eli Lilly & Co., Inc.*, Civil Action No. 07-2057, 2007 WL 2916195, at *7 (E.D. Pa. Oct. 5, 2007). Although a court may "look to more than just the pleading allegations to identify indicia of fraudulent joinder," *In re Briscoe*, 448 F.3d at 219, it must exercise restraint, being careful not to step, "from the threshold jurisdictional issue into a decision on the merits." *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 112 (3d Cir. 1990). The Court "must consider the complaint at the time the notice of removal was filed and accept all factual allegations in the complaint as true." *Contreras Madrid v. Walmart Stores E., LP*, No. CV 24-5229, 2025 WL 824124, at *2 (E.D. Pa. Mar. 14, 2025) (citing *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851–52 (3d Cir. 1992)).

> When deciding whether it has subject-matter jurisdiction, the Court's examination of the plaintiff's claims is less probing than on a motion to dismiss. *Batoff*, 977 F.2d at 852. Therefore, even if a party is not fraudulently joined, the claims against that party may ultimately be dismissed on a Rule 12(b)(6) motion. *Id.* Indeed, the fraudulent joinder analysis requires the court to ask only whether the claims are "wholly insubstantial and frivolous," and "all doubts should be resolved in favor of remand." *Id.* at 851–52.

*Id.* When conducting this analysis, the Court must not "step[ ] from the threshold jurisdictional issue into a decision on the merits." *Boyer*, 913 F.2d at 112. Thus, "a removing defendant ... who charges that the plaintiff ...has fraudulently joined a party in order to destroy diversity jurisdiction,

3

has a heavy burden of persuasion." *Steel Valley Authority v. Union Switch and Signal Div.*, 809 F.2d 1006, 1012 n.6 (3d Cir. 1987).

### B. FED. R. CIV. P. 12(b)(6) Motion to Dismiss

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

## II. ANALYSIS

The propriety of Defendant's removal hinges on whether Fender is a properly joined party. If she is, the parties are not completely diverse, and the Court lacks jurisdiction. If she is not, the remaining parties are diverse and federal jurisdiction could be proper. The Court cannot find a joinder fraudulent "[s]imply because [it] come[s] to believe that, at the end of the day, a state court would dismiss the allegations against a defendant for failure to state a cause of action." *Kallman v. Aronchick*, 981 F. Supp. 2d 372, 380 (E.D. Pa. 2013) (quoting *Lyall v. Airtran Airlines, Inc.*, 109 F. Supp. 2d 365, 367–68 (E.D. Pa. 2000)). Rather, a finding of fraudulent joinder is reserved for situations where recovery from the non-diverse defendant is a clear legal impossibility. *West v. Marriott Hotel Servs., Inc.*, No. CIV.A. 10–4130, 2010 WL 4343540, at *3 (E.D. Pa. Nov. 2, 2010) (quotations omitted). That is the case here. In deciding that Fender was not properly joined, the Court is not holding that Kincaid's claim against her will likely fail, but rather, that under Pennsylvania law, there is no tenable claim against her arising out of the allegations in the complaint.

Kincaid brings her state negligence claim against Fender under a participation theory of liability. "Under Pennsylvania law, although an officer or agent of a corporation who takes no part in the commission of a tort committed by the corporation is not individually liable to third parties for such a tort, such an officer or agent may be held liable in tort under the 'participation theory.'" *Sherfey v. Johnson & Johnson*, No. CIV.A. 12-4162, 2014 WL 715518, at *6 (E.D. Pa. Jan. 29, 2014) (quoting *Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86, 90 (Pa. 1983)). To impose liability on an employee under the participation theory, a "plaintiff must establish that the individual officer or agent engaged in misfeasance rather than mere nonfeasance," that is, the officer/agent improperly performed as opposed to "fail[ed] to act." *Id.*

The facts pled against Fender state only that she was the manager working at the time of the incident, and came to Kincaid's aid after the urine spilled on her. The complaint avers that the urine *may* have been in the cup for up to one week.[1] But the complaint is bereft of any facts that could lead to any inference that Fender participated in creating the harm that Kincaid experienced. Kincaid pled no acts that can be construed as misfeasance.

In her motion to remand, Kincaid argues that the theory of negligence she asserts against Fender stems from misfeasance, rather than nonfeasance. Yet, the bases for negligence asserted against Fender in the complaint are couched in terms of nonfeasance:

a. In allowing or permitting a cup of urine to exist in the store for an unreasonable period of time;

b. Failure to cure the hazardous condition;

c. In failing to take the necessary precautions to see that the store was maintained so as to not create an unsanitary and dangerous condition;

d. In failing to reasonably inspect said premises so as to discover the unsanitary and dangerous condition;

e. In failing to maintain proper written or formal policies and procedures setting forth regular inspection of the shopping area to ensure that unsanitary and unsafe conditions do not exist;

f. Failing to adequately staff stores so as to allow these types of unsafe and unsanitary conditions to exist;

g. Violation of standard and generally accepted practices for sanitation and safety on the premises;

---

[1] The complaint pleads that Fender "admitted the cup of urine could have been on the shelf for up to a week." (ECF No. 3-1, ¶13). In deciding a motion to remand for fraudulent joinder, the Court may look beyond the four corners of the complaint. *Ahearn v. BJ's Wholesale Club, Inc.*, 2020 WL 1308216, at *2 (E.D. Pa. Mar. 18, 2020) (citing *Briscoe*, 448 F.3d at 218). In a police report submitted as an exhibit to Kincaid's opposition to the motion to remand, it states that "Fender reported that the mug of urine could have only been there for 3-7 days because the houseware section was just redone." (ECF No. 13-1, p. 2).

> h. In failing to recognize and address the unsafe, and unsanitary condition existing on the property;
>
> i. In failing to maintain the shopping area in a proper, safe, and sanitary condition in violation of local ordinances, law, and/or local authorities; and
>
> j. Such other acts of negligence as may be revealed during the course of discovery and/or at the time of trial of this matter.

(ECF 3-1, pp. 5-6). The plain language of these allegations overwhelming sounds in the theory that Fender was negligent for failing to take action that may have prevented the incident.

Kincaid's arguments in support of remand ignore the plain language of her complaint and defy basic principles of logic—she asserts that Fender's nonaction was affirmative action. For example, she argues that "[t]he 'act to be done' was . . . Fender permitting a cup of urine to remain on a store shelf—for, by her own admission, up to a week—in the very store she was responsible for managing." (ECF No. 16, p. 5). Kincaid further argues that: "Plaintiff has specifically alleged that this occurred under Fender's supervision, and that she failed to take appropriate action to identify, remove, or prevent such a hazardous condition. These facts go directly to Heather Fender having 'directed the particular act to be done or participated or cooperated therein' by actively managing the premises in a manner that allowed the dangerous condition to persist." (*Id.*). Again, Kincaid takes the position that Fender's tortious *action* was her *inaction*—her "fail[ure] to take appropriate action to identify, remove, or prevent such a hazardous condition."

The Court disagrees with Kincaid's position. It finds that Kincaid's argument is an exercise in sophistry. Her theory nullifies the distinction between misfeasance and nonfeasance. Under her supposed logic, Fender's failure to take actions required by a standard of care is deemed affirmative misconduct. The Court rejects her argument. Kincaid's complaint's plain language pleads nonfeasance. Nonfeasance is not misfeasance under Pennsylvania's articulation of the participation theory.

7

In *Whitham v. Walmart Stores East LP*, No. CV 21-3287, 2021 WL 4745069 (E.D. Pa. Oct. 10, 2021), the district court rejected the same argument raised by Kincaid. There the plaintiff was injured in a slip and fall at Walmart. He sued Walmart and one of its store managers. Acknowledging the distinction between misfeasance and nonfeasance under the participation theory, the plaintiff argued that the manager's actions were his failure to adequately supervise, implement policy, and otherwise perform his duties in a manner that would have prevented the plaintiff's accident. The district court rejected this position, holding that "[t]he gravamen of [the plaintiff's] claims against [the defendant manager] is nonfeasance rather than misfeasance: he failed to forestall or eliminate the conditions that allegedly caused [plaintiff] to fall." *Id.* at *4. "As a result, [defendant manager's] joinder was fraudulent because there is "no reasonable basis in fact or colorable ground" to support [plaintiff's] claims against him under the participation theory." *Id.* (quoting *Briscoe*, 448 F.3d at 216).

Likewise in *Contreras Madrid v. Walmart Stores E., LP*, No. CV 24-5229, 2025 WL 824124 (E.D. Pa. Mar. 14, 2025), the district court found that Angel Sanabria, the store manager, was fraudulently joined in a slip and fall case because the allegations against him stemmed only from his failure to take certain actions, rather than any actual act that could constitute misfeasance. The allegations against Sanabria were: "that, at the time of the accident, Sanabria was 'the owner, operator, maintainer, possessor, lessor, lessee and/or otherwise legally responsible for the care, control and safety of the premises.'" *Id.* at *1. And that "Sanabria was negligent for failing to clean up the liquid, oversee periodic inspections of the premises, provide sufficient warning to customers, and provide adequate safeguards." *Id.* (internal citations to complaint omitted). The district court observed: "Contreras Madrid alleges Sanabria was in some way 'responsible for the care, control and safety' of the Walmart store and was negligent through a litany of failures to act,

<pre style="margin:0; font: inherit; white-space: pre-wrap">

such as failure to 'clean up the liquid substance' and 'failure to request and supervise periodic inspections of the premises.'" *Id.* at *3. (internal citations to complaint omitted). It reiterated that "the requirement that an employee 'participate' in the tortious activity means liability pursuant to the participation theory only attaches for misfeasance, not nonfeasance." *Id.* (citing cases). The district court held that Sanabria was fraudulently joined because the allegations against him were essentially claims of culpable inaction, rather than action:

> Here, Contreras Madrid alleges Sanabria *failed* to take various measures to prevent the incident, not that he actively participated in bringing it about—textbook nonfeasance. *See, e.g., Brindley v. Woodland Village Restaurant*, 652 A.2d 865, 869 (Pa. Super. 1995) (concluding restaurant "owners/ employees" were not liable under the participation theory when a patron slipped and fell in the restroom because there was no evidence of "active, knowing participation" in putting the restroom in the dangerous condition); *Aldorasi*, 344 F. Supp. 3d at 824 (concluding participation theory is inapplicable because "the Complaint faults [the employees] only for what they failed to do"); *Avicolli v. BJ's Wholesale Club, Inc.*, No. 21-1119, 2021 WL 1088249, at *3 (E.D. Pa. Mar. 22, 2021). As a result, there is "no reasonable basis in fact or colorable ground" to support Contreras Madrid's claims against Sanabria under the participation theory. *Briscoe*, 448 F.3d at 216.

*Id.*[2]

The assertions levied against Fender in Kincaid's complaint assert failures to act, rather than participation by Fender in the harm through misfeasance. Nearly every subsection of Paragraph 16 of the complaint expressly uses the term "failure" or "failing" in describing the negligence asserted against Fender. (ECF No. 3-1, pp. 5-6). These subsections unequivocally assert nonfeasance. Although subparagraphs a and g do not use the terms "fail" or "failure," they stand for the same proposition. (*Id.*). For example, the claim that Fender was negligent "[i]n allowing or permitting a cup of urine to exist in the store for an unreasonable period of time," is at

---

[2] The Court recognizes that district courts, in general, have reached different conclusions about whether the allegations against a store manager are based in a reasonable basis in fact or colorable ground in law.

9</pre>

its core an assertion of negligence for the failure to discover and remedy the situation. (*Id.*). Likewise, the alleged "violation of standard and generally accepted practices for sanitation and safety on the premises" in the specific context of the facts pled here is a claim for failing to take steps to discover that the cup on the shelf was filled with urine and remedy that condition before Kincaid's incident. (*Id.*). Even the most generous reading of the complaint in Kincaid's favor fails to show any allegations of misfeasance. Fender is not pled to have done anything that ultimately led to the incident at issue. Rather, Kincaid's allegations can, at best, support a claim of nonfeasance on Fender's part. This is not enough to support a participation theory of liability under Pennsylvania law.

There is no reasonable basis in fact or colorable legal grounds for Kincaid's claim against Fender. The Court holds, therefore, that Fender was improperly joined. As such, removal was proper. Likewise, for the reasons set forth above, Kincaid has not pled a tenable claim against Fender. The claims against Fender will be dismissed for failure to state a claim.[3]

---

[3] The Court's determination that the claims pled against Fender are without basis in law or fact due to the failure to assert any acts of misfeasance is a sufficient basis for dismissal. As another basis for dismissal under Rule 12(b)(6), the Court questions whether the pleadings against Fender can support a finding that she owed a duty to Kincaid under Pennsylvania law. It is well-established that "the mere happening of an accident does not impose liability on any party." *Martino v. Great Atl. & Pac. Tea Co.*, 213 A.2d 608, 610 (Pa. 1965). A business is "not an insurer of the safety of business visitors and owed only the duty of reasonable care under the circumstances, specifically, to correct unsafe conditions discoverable through the exercise of reasonable care and diligence." *Id.* "Indeed, the issue of whether the defendant owed a duty of care to the plaintiff is the primary question in a negligence suit." *Shellenberger v. Kreider Farms*, 288 A.3d 898, 906 (Pa. Super. 2023) (quoting *Gutteridge v. A.P. Green Services, Inc.*, 804 A.2d 643, 655 (Pa. Super. 2002)). As the Pennsylvania Supreme Court has repeatedly recognized, "the existence of a duty is a question of law for the court to decide." *R.W. v. Manzek*, 888 A.2d 740, 746 (Pa. 2005). The existence of a duty is, ultimately, based on considerations of public policy and social expectations. *Id.* at 746-47 (quoting *Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1168-69 (Pa. 2000)). Factors that Pennsylvania courts consider in determining whether a duty exists include "the nature and foreseeability of the risk in question" and "the consequences of imposing the duty." *Id.* at 747 (citing *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 281 (Pa. 2005).

### III. CONCLUSION

For the foregoing reasons, the motion to remand will be denied and the motion to dismiss will be granted. Orders of Court will follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

9/2/25
Date

---

As pled, Kincaid's claim against Fender stands on the supposition that she had a duty to take action so as to ensure that no cup of urine, or any other foreign substance, could be located on the shelves, posing a danger to customers. This goes beyond the well-recognized obligation of shopkeepers to inspect the premises for foreseeable dangers, such as tripping and slipping hazards. To recognize a duty on Fender's part would essentially impose an obligation upon her to continually inspect the cups in the houseware department of her store to make sure that nobody surreptitiously filled one with a foreign substance. This would logically apply to any other vessel (such as vases, planters, boxes, etc.) carried by the store. The consequence of imposing such a duty would require constant inspection of the merchandise on the shelves or, perhaps, to place any object capable of holding unusual and unintended contents out of public reach. The Court does not believe that Pennsylvania law creates such a duty.